IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE SMITH,<br>o/b/o Devonte D. Smith, | ) | CASE NO. 1:06 CV 2025 |
| | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **REPORT & RECOMMENDATION** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Devonte Smith, for children's supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Smith had severe impairments consisting of attention deficit hyperactivity disorder, learning disorder, and oppositional defiant disorder.[1]  The ALJ determined, however, that Smith did not have an impairment or combination of impairments that met, equaled, or functionally equaled any impairment listed in Appendix 1.[2]  He concluded, therefore, that Smith was not under a disability.[3]

---

[1] Transcript ("Tr.") at 44.

[2] *Id.* at 44-55.

[3] *Id.* at 55.

Smith has challenged the decision of the Commissioner on the ground that substantial evidence in the record does not support the ALJ's finding that his impairments did not equal or functionally equal the requirements of a listing.  Specifically, Smith presents five issues for decision on judicial review:

1.  Whether the ALJ erred in assessing noncompliance with prescribed treatment which the ALJ used to discredit Devonte and his mother and which the ALJ used to support a finding that Devonte has "less than marked" limitations.

2.  Whether the ALJ erred in failing to articulate good reasons in rejecting the opinion of Devonte's longtime treating psychologist, Lisa Lafave, Ph.D., that Devonte meets the listing for ADHD at 112.11.

3.  Whether the ALJ erred in failing to articulate any reasons, much less good reasons, why Devonte does not medically equal listing 112.11 for ADHD and/or in combination with Oppositional Defiance Disorder (ODD).

4.  Whether there is substantial evidence to support the ALJ's findings that Devonte has a "less than marked" limitation in the domain of "interacting and  relating with others" and  in "caring for self."

5.  Whether the ALJ erred in failing to have an ME at the administrative hearing to assist in evaluation of medical criteria, limitations in domains, and compliance with prescribed treatment/medications.

I conclude that substantial evidence supports the ALJ's finding that Smith did not meet, equal, or functionally equal a listing.  In so concluding, I determine that the ALJ gave appropriate weight to the opinion of Smith's treating psychologist and that the reasons given for discounting that opinion are sufficient.  Further, I conclude that the ALJ acted within his discretion in not calling a medical expert at the hearing.  Finally, although the ALJ did not properly follow the procedures outlined in the applicable regulations and rulings for

assessing noncompliance with prescribed medication, with or without medication, substantial evidence supports the finding that Smith did not meet, equal, or functionally equal a listing. The ALJ's noncompliance, therefore, is harmless error.   The Commissioner's decision to deny Smith's application must be affirmed.

### Relevant Medical Evidence

There is no dispute that Smith suffers from attention deficit hyperactivity disorder ("ADHD").

Smith began treating with John Conomy, M.D., a neurologist, for ADHD in October of 2002.  Smith's mother reported to Dr. Conomy that Smith had been taking Ritalin but was switched to Adderall, which caused side effects, so she stopped the medication.[4]  After examination, the doctor restarted Ritalin, and Smith responded with a marked improvement.[5]  Smith's last saw Dr. Conomy on April 15, 2003.[6]

For reasons unexplained in the transcript, Smith began seeing a Dr. Friedell in July of 2003.[7]  Initially, Dr. Friedell continued Smith on Ritalin.[8]  In November of 2003, after

--------

[4] *Id.* at 126.

[5] *Id.* at 123-24.

[6] *Id.* at 123.

[7] *Id.* at 235.

[8] *Id.*

complaints that Smith did not "feel-good" on Ritalin, Dr. Friedell stopped the drug.[9] Dr. Friedell then began a trial of another drug, Concerta.[10]

Smith had a documented treating relationship with Lisa Lafave, Ph.D., a psychologist, from February of 2000 through August of 2005.[11]  Dr. Lafave generated two functional assessments that are relevant to the issues presented in this case.  Dr. Lafave completed the first assessment in December 2003, while Smith was treating with Dr. Conomy and was taking prescribed medication.[12]  She diagnosed Smith with the impairments of ADHD and oppositional defiant disorder.[13]  She rated these impairments "moderate" in the domains of attending and completing tasks, moving about and manipulating objects, and caring for oneself.[14]  In the domain of interacting and relating with others, she rated Smith's impairments as "marked."[15]  As discussed at the oral argument in this case, this assessment, if given full weight, would not support a finding of functional equivalency with a listing or of meeting the listing for ADHD under § 112.11.

---

[9] *Id.* at 234.

[10] *Id.*

[11] *Id.* at 132, 376.

[12] *Id.* at 270-72.

[13] *Id.* at 270.

[14] *Id.* at 271.

[15] *Id.*

In August of 2005, Dr. Lafave prepared another functional assessment that tracks the elements of the listing in § 112.11.[16]  In this assessment, she rated Smith's impairments from ADHD "marked" in the domains age-appropriate social functioning, age-appropriate personal functioning, and maintenance of concentration, persistence, or pace.[17]  If given full weight, this assessment would support a finding that Smiths's ADHD impairment met the listing under § 112.11 and of functional equivalency with a listing.

Between these assessments, Smith stopped taking his prescribed medication.  In April 2004 Dr. Lafave reported that Smith's mother was expressing reservations about the effects of the medication upon her son.[18]  By June of 2004 Dr. Lafave was considering termination of treatment, because Smith's mother hadn't attended any sessions in the last quarter.[19]  Later that month, Dr. Lafave noted that Smith and his mother did not want to continue with prescribed medication.[20]  Dr. Lafave advised Smith's mother to obtain the input of the physician prescribing the medication.[21]  In July of 2004 Dr. Lafave reported that Smith was

---

[16] *Id.* at 375-77.

[17] *Id.* at 377.

[18] *Id.* at 362.

[19] *Id.* at 364.

[20] *Id.* at 365.

[21] *Id.*

off his medication and seem to be "enjoying it."[22]  From the report of that therapy session, it appears that Smith was doing well at the time.[23]

The transcript contains no therapy records between July and November of 2004.  On November 1, 2004, Dr. Lafave reported that she had spoken to Smith's mother by phone about a greater commitment to therapy.[24]  She made the notation "close case – family is no longer committed to tx [treatment]."[25]

Therapy continued on November 29, 2004, with Dr. Lafave observing "therapist indicated she was pleased they were in attendance so the case would not need to be closed...."[26]  She noted that Smith's mother had stopped medication in the spring because he was not eating or sleeping.[27]  It appears from Dr. Lafave's remaining notes of that session that Smith was doing well in school, although he had some problems.[28]  At a therapy session on December 6, 2004, Dr. Lafave noted a report by Smith's mother that he had made gains in all the areas and that he needed to continue work in all areas through the next year.[29]

---

[22] *Id.* at 366.

[23] *Id.*

[24] *Id.* at 367.

[25] *Id.*

[26] *Id.* at 368.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 369.

Dr. Lafave's therapy notes of January 4, 2005, state that Smith's mother "has been pleased with progress in school."[30]  Apparently, the therapy scheduled for February 10, 2005, did not occur because Smith's mother did not have a car.[31]  Dr. Lafave's treatment notes of March 16, 2005, indicate that Smith's grades had gone down and that he was still extremely hyperactive in the session, at school, and at home.[32]

The next therapy apparently did not occur until June 2, 2005.[33]  At that time, Smith was having problems with his siblings.[34]  The therapy sessions scheduled for June 23, 2005, and July 26, 2005, were canceled.[35]  As stated above, on August 15, 2005, Dr. Lafave prepared the second functional assessment upon which Smith now primarily relies.[36]  At that time, from Dr. Lafave's records, she had not seen Smith in over two months.

During this critical time frame of the 2004-2005 school year, Smith attended Hope Academy West.[37]  School psychologists Robert Murray and Sandra Webster, Ph.D., prepared an evaluation team report dated May 9, 2005.[38]

---

[30] *Id.* at 370.

[31] *Id.* at 371.

[32] *Id.* at 372.

[33] *Id.* at 373.

[34] *Id.*

[35] *Id.* at 374-75.

[36] *Id.* at 376-77.

[37] *Id.* at 345.

[38] *Id.* at 345-59.

The psychologists administered the Wechsler Intelligent Scale for Children – Fourth Edition in March of 2005.[39]  The results of that test showed that Smith was functioning within the average range with respect to general level of intelligence, verbal comprehension, perceptual reasoning, and working memory.[40]  He scored high average in processing speed.[41]

To assess academic achievement, the psychologists administered the Woodcock-Johnson Test of Achievement – Third Edition in March of 2005.[42]  The test results showed that Smith was in the average range in terms of academic achievement skills.[43]

With respect to social and emotional functioning, the psychologists used the four assessments:

- the Achenbach Teacher's Report Form,

- the Achenbach Child Behavior Checklist,

- the Connors' Parent Rating Scale – Revised:  Long Version, and

- the Connors' Teacher's Rating Scale – Revised:  Long Version

All of these assessments were completed in the spring of 2005.

---

[39] *Id.* at 348.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 350.

[43] *Id.* at 351.

The Teacher's Report Form disclosed that Smith was performing at grade level in math, reading, science, social studies, and spelling.  The teacher rated him about average with respect to working hard, learning, and being happy compared to typical students of the same age.[44]  The teacher rated behaving appropriately at somewhat less than average.[45]  Smith's Total Adaptive Functioning Score was in the normal range.[46]  His scores for internalizing, withdrawn, somatic complaints, anxious/depressed, social problems, thought problems, attention problems, and delinquent behavior syndromes were in the normal range.[47]  His score for aggressive behavior syndrome was in the clinical range.[48]

Smith's mother completed the Child Behavior Checklist.[49]  A number of her ratings placed Smith in the clinical or borderline clinical range.  The psychologists observed:

> These results indicate that Devonte's mother reported more problems than are typically reported by parents of boys age 6 to 11, particularly problems of anxiety or depression, withdrawn or depressed behavior, problems in social relationships, attention problems, rule-breaking behavior, and problems of an aggressive nature.[50]

Smith's mother also completed the Parent Rating Scale.  Based on her responses, the psychologists noted potential problems related to oppositional behavior, cognitive

---

[44] *Id.* at 353.

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

problems/inattention, anxious/shy, social problems, and including a cluster of symptoms related to attention deficit hyperactivity disorder.[51]

Smith's teacher completed the Teacher Rating Scale.[52]  The psychologists noted that the teacher's responses indicated potential problems related primarily to hyperactivity and symptom clusters related to ADHD.[53]

The evaluation report noted no serious problems with respect to fine motor abilities[54] or vision and hearing.[55]  The report summary indicated that Smith's IQ was within the average range and that his verbal comprehension, perceptible reasoning, and working memory scores were all above average.[56]  His processing speed index was in the superior range, although his reading comprehension was in the low average range.[57]  The psychologists observed that Smith's ADHD "may be impeding his ability to learn effectively."[58]  They certified that his ADHD qualified him for Special Education Services.[59]

---

[51] *Id.* at 354.

[52] *Id.*

[53] *Id.*

[54] *Id.* at 355.

[55] *Id.* at 356.

[56] *Id.* at 359.

[57] *Id.*

[58] *Id.*

[59] *Id.*

At the hearing, the ALJ developed the issue of noncompliance with medications. Smith testified that the medications made him feel "all tickly" and affected his ability to stand up, eat, and play with his friends.[60] He also testified that the medication made him feel like things were crawling on him.[61] His mother testified that she took him off of medication because of side effects such as hallucinations, nightmares, insomnia, loss of appetite, and depression.[62]

## Analysis

This is a difficult case because I must conclude that although the ALJ did not properly handle the noncompliance with medication issue, that error is harmless on this record . With or without noncompliance with prescribed medication, substantial evidence supports the finding that Smith did not meet, equal, or functionally equal a listing.

**1.     The proper procedure for handling the noncompliance with prescribed treatment issue under the agency's regulations and rulings**

20 C.F.R. § 416.930(a) provides that in order to get benefits, a claimant must follow treatment prescribed by a physician if such treatment, in the case of a child, can reduce functional limitations so that they are no longer marked and severe.  20 C.F.R. § 416.930(b) provides that if the claimant does not follow prescribed treatment without reason, he or she will not be found disabled.

---

[60] *Id.* at 394.

[61] *Id.* at 394-95.

[62] *Id.* at 404.

-11-

Social Security Ruling 82-59[63] elaborates upon the procedures for determining noncompliance with prescribed medication and the existence or non-existence of a justifiable cause for failure to follow that treatment.  Under this ruling, the treatment at issue must be prescribed by a treating source.  If the Agency decides that the prescribed treatment will render the claimant not disabled, the claimant must be given a full opportunity to fully express specific reasons for not following the prescribed treatment.  The record must reflect those reasons clearly and accurately.

The ruling directs the ALJ to ask the claimant whether he or she understand the nature of the treatment and the probable course of the medical condition without the prescribed treatment.  The claimant should be encouraged to express in his or her own words why the recommended treatment has not been followed.  The ALJ should make the claimant aware that the information supplied will be used in deciding the disability claim and that continued failure to follow prescribed treatment without good cause can result in the denial of benefits. The claimant should be afforded the opportunity to undergo the prescribed treatment.

The burden of proof, with respect to noncompliance and lack of good cause for noncompliance, is with the Commissioner.[64]  Courts have not hesitated to remand cases where the ALJ has failed to follow the procedures outlined in Ruling 82-59.[65]  Specifically,

---

[63] Social Security Ruling 82-59:Titles II and XVI: Failure to Follow Prescribed Treatment, *available at* http://www.ssa.gov/OP_Home/rulings/di/02/SSR82-59-di-02.html.

[64] *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985).

[65] *Blumberg v. Comm'r of Soc. Sec.*, No. 6:04CV047, 2005 WL 2453104, at *4 (W.D. Va. Oct. 4, 2005); *Nunley v. Barnhart*, 296 F. Supp. 2d 702, 704-05 (W.D. Va. 2003).

in *Nunley v. Barnhart*,[66] the district court remanded the case because the ALJ did not undertake detailed questioning of the claimant regarding his understanding of the prescribed treatment, did not inform the claimant that the effect of noncompliance may be denial of benefits, and did not afford the claimant an opportunity to undergo the prescribed treatment before denying benefits.[67]

**2.      The ALJ failed to follow the procedures in Social Security Ruling 82-59.**

Here, although the ALJ did question Smith and his mother about the reasons for discontinuing prescribed medication, he did not inform them that noncompliance may result in a denial of benefits or afford them the opportunity to resume taking the prescribed medication before denying benefits.  The ALJ found that Smith had failed to follow prescribed treatment without good reason.[68]  Although there is nothing in the record indicating that Smith's mother consulted with the prescribing, treating physician regarding side effects, and the record seems clear that she unilaterally made the decision to cease medication without the advice of the prescribing physician, nevertheless, the ALJ did not fully comply with the procedures outlined in Ruling 82-59.

As explained below, however, this technical noncompliance does not justify a remand on this record.

**3.      Substantial evidence supports the ALJ's finding that Smith did not meet, equal, or functionally equal, a listing.**

---

[66] *Nunley*, 296 F. Supp. 2d 702.

[67] *Id.* at 704-05.

[68] Tr. at 50.

The issues presented in this case resolve around a comparison of the two functional assessments done by Dr. Lafave and an analysis of the medical records and school records for the period intervening between those two reports.  Dr. Lafave's first assessment, completed in December of 2003, rated Smith as "marked" in only one domain.[69]  Based upon this assessment, Smith did not functionally equal a listing or meet or equal the listing for ADHD under § 112.11.

Dr. Lafave's second assessment, done in August of 2005, substantially tracks the criteria of § 112.11 and offers opinions that, if given full weight, would support a finding of the meeting of that listing and functional equivalency with a listing.

Although the transcript documents the decision of Smith's mother to take him off of prescribed medication during the interval between the two assessments, and some worsening of Smith's condition during that time period, it does not support a finding that Smith deteriorated to the extent that by August of 2005 he met, equaled, or functionally equaled a listing, even though he did not do so in December of 2003.

Dr. Lafave documents that Smith's mother expressed reservations about his medication and took Smith off of medication in the spring or early summer of 2004.[70]  Nevertheless, in July of 2004, Dr. Lafave observed that Smith was enjoying being off his medication and that he was doing well at the time.[71]  No meaningful therapy occurred

---

[69] *Id.* at 271.

[70] *Id.* at 362, 364, 365.

[71] *Id.* at 366.

between July and November of 2004.[72]  Therapy, nevertheless, resumed in late November

of 2004, at which time Dr. Lafave reported that Smith was doing well in school off of his

medication.[73]  In therapy notes in December of 2004, Dr. Lafave noted that Smith's mother

was pleased with his gains during the school year.[74]  The same observation appears in therapy

notes in January of 2005.[75]

No therapy took place until March of 2005, at which time Dr. Lafave reported that

Smith's grades have gone down and that he was still extremely hyperactive.[76]  Another gap

in therapy occurred between March and June of 2005.  In the June 2005 therapy notes,

Dr. Lafave observed that Smith was having problems with his siblings.[77]  No further therapy

took place.[78]  Dr. Lafave's second assessment was done in mid-August of 2005, at which

time she had not seen Smith for over two months.[79]

The therapy records for the period between December of 2003 and June of 2005

indicate that for the most part Smith was doing well but had some backsliding in the spring

of 2005.  These notes do not document a significant deterioration in Smith's condition that

---

[72] *Id.* at 367.

[73] *Id.* at 368.

[74] *Id.* at 369.

[75] *Id.* at 370.

[76] *Id.* at 372.

[77] *Id.* at 373.

[78] *Id.* at 374-75.

[79] *Id.* at 376-77.

would justify a finding that although he did not meet, equal, or functionally equal a listing in December of 2003, he nevertheless should have been listed by August of 2005.

Smith's school records support the same conclusion.  The extensive evaluation team report prepared by the school psychologists at Hope Academy West in May of 2005[80] evidences a student doing reasonably well in his academics with some problems related to ADHD.  The child portrayed by the assessments and observations noted in the evaluation team report did not present the substantial limitations opined by Dr. Lafave in her August, 2005 assessment.[81]

As in many cases, the ALJ's articulation with respect to Dr. Lafave is less than perfect.[82]  Nevertheless, he notes inconsistencies between the substantial limitations in the August, 2005 assessment and the observations in her treatment notes,[83] and the inconsistencies between her assessment and the evaluation team report of the school psychologist.[84]  The articulation is sufficient to support the diminished weight assigned to Dr. Lafave's opinion.  Because Dr. Lafave's opinion was properly handled by the ALJ, substantial evidence supports the ALJ's decision to find that Smith did not meet, equal, or functionally equal a listing.

---

[80] *Id.* at 345-359.

[81] See the extensive discussion and analysis of the evaluation report at pages 8-11 *supra.*

[82] *Id.* at 48-49.

[83] *Id.* at 48.

[84] *Id.* at 49.

Again, as in many cases, the administrative record would have been enhanced by the testimony of a medical expert as to the extent of Smith's limitations as reflected in the transcript and Smith's mother's justification for withdrawing his prescribed medication. Nevertheless, as explained above, the transcript is adequate to support the ALJ's finding, under the substantial evidence standard of review, that Smith did not meet, equal, or functionally equal a listing.  Furthermore, although the withdrawal of prescribed medication is well documented, and there is no indication that Smith's mother made any attempt to consult with the prescribing physician about her decision, substantial evidence supports the finding that, with or without the prescribed medication, Smith's condition had not so deteriorated between December of 2003 and August of 2005 so as to justify a decision that he should have been listed.  The ALJ was within his discretion in not calling a medical expert to testify at the hearing in this case.[85]

Finally, as a general rule, the ALJ's failure to follow the agency's regulations and rulings requires a reversal.[86]  As noted above, the ALJ did not comply with the letter of Ruling 82-59.  Here, however, because even with noncompliance, the administrative record does not support a finding that Smith met, equaled, or functionally equaled a listing, the ALJ's failure to follow the procedure set out in the ruling is harmless error.[87]

---

[85] *Davis v. Chater*, 104 F.3d 361, 1996 WL 732298, at *2 (6th Cir. 1996)(unreported table decision).

[86] *Wilson v. Comm'n. of Soc. Sec.,* 378 F.3d 541, 545 (6th Cir. 2004).

[87] *Bass v. McMahon,* 499 F.3d 506, 510 (6th Cir. 2007).

-17-

**Conclusion**

Substantial evidence supports the finding of the Commissioner that Smith had no disability.   Accordingly, the decision of the Commissioner denying Smith children's supplemental security income is affirmed.


Dated:   June 6, 2008                                    s/ William H. Baughman, Jr.
                                                                  United States Magistrate Judge


**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[88]

---

[88] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).